IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>RONALD ALLEN BRANDBERG,<br><br>    Defendant. | Case Nos. 6:18-cr-00606-AA<br>6:15-cr-00191-AA<br><br>**OPINION AND ORDER** |

AIKEN, District Judge:

Before the Court is defendant Ronald Allen Brandberg's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A) (doc. 41)[1]. The Court held oral argument on the motion on September 17, 2020, and denied the motion on the record for the following reasons.

## STANDARDS

Generally, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25

---

[1] Unless otherwise noted, all record cites are to the docket in Case No. 6:18-cr-00606-AA.

(2010). Compassionate release under § 3582(c)(1)(A) provides an exception in rare cases. Until 2018, § 3582 allowed compassionate release only on a motion by the Bureau of Prisons ("BOP"). The First Step Act, Pub. L. No. 115-391, § 603, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended § 3582 to authorize courts to grant compassionate release motions filed by defendants where they had petitioned BOP to bring a motion on the defendants' behalf and either they had exhausted all administrative appeals after a denial or thirty days had elapsed since the Warden received their request.

Section 3582(c)(1)(A) authorizes a court to modify a defendant's sentence if it finds that two conditions have been satisfied: (1) that "extraordinary and compelling reasons warrant such a reduction" and (2) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). In making this determination, the Court must "*consider*[] the factors set forth in [18 U.S.C.] § 3553(a) to the extent applicable[.]" *Id*. (emphasis added).

The relevant policy statement for sentence reductions under the compassionate release statute is found in the United States Sentencing Guidelines, § 1B1.13. According to the policy statement "extraordinary and compelling reasons" for release are: (1) the "Medical Condition of the Defendant" – the defendant is suffering from a terminal illness, serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and

from which he or she is not expected to recover[;]" (2) the "Age of the Defendant" – the defendant is at least 65 years old, is experiencing serious deterioration in physical or mental health because of the aging process, and has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less; (3) "Family Circumstances" – the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner; and (4) any other extraordinary and compelling reasons determined by the Director of BOP. U.S.S.G. § 1B1.13 cmt. 1.

Although the fourth category of "extraordinary and compelling reasons" encompasses other circumstances *as determined by the BOP director*, § 1B1.13 cmt. 1(D), the Court follows the majority of federal district courts that "have found that the most natural reading of the amended § 3582(c) and 28 U.S.C. § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it." *United States v. Perez*, No. 88-10094-1-JTM, 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020); *see also United States v. Joling*, No. 6:15-cr-00113-AA, 2020 WL 1903280, at *3 (D. Or. Apr. 17, 2020). Nevertheless, the policy statement remains instructive. *See United States v. Hanson*, No. 6:13-cr-00387-AA-1, 2020 WL 3605845, at *3 (D. Or. July 2, 2020); *United States v. Haft*, No. 3:12-cr-42-SI, 2020 WL 3412195, at *2 (D. Or. June 22, 2020).

The policy statement also requires a finding that the defendant does not pose a danger to others or the community under the factors provided in 18 U.S.C. § 3142(g).

Page 3 – OPINION AND ORDER

U.S.S.G. § 1B1.13(2). The factors include: 1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

Finally, the policy statement observes that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction . . . after considering the factors set forth in [§ 3553(a)] and the criterial set forth in this policy statement, such as . . . whether the defendant is a danger." U.S.S.G. § 1B1.13 cmt. 4. In imposing a sentence which is "sufficient, but not greater than necessary" under § 3553(a), courts consider, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, community safety, the kinds of sentences available, the need to avoid unwanted disparities in sentencing, and all other obligations of sentencing including punishment, deterrence, and rehabilitation. 18 U.S.C. § 3553(a).

## DISCUSSION

On August 10, 2016, the Court sentenced Brandberg to time served and a three-year term of supervised release, following his guilty plea to one count of felon in possession of a firearm, 18 U.S.C. § 922 (g)(1). Docs. 42, 43 in Case No. 6:15-cr-00191-AA. On August 11, 2018, while Brandberg was still under the Court's supervision, Newport Police officers found a total of 423 grams of methamphetamine in Brandberg's pocket and car during a traffic stop. As a result, the Court issued a

Warrant and Order to Show Cause why Brandberg's term of supervised release should not be revoked (docs. 51, 52 in 6:15-cr-00191-AA), and the Government filed additional criminal charges against Brandberg. *See* Case. No. 6:18-cr-00606-AA.

Brandberg admitted to violating the terms of his supervised release and pleaded guilty to one count of possession of methamphetamine with intent to distribute. At sentencing on June 24, 2020, the Court found that Brandberg's new offense carried a guidelines range of 108 to 135 months' imprisonment but sentenced him to the mandatory minimum of 60 months' instead, to be served concurrently with the 12 months' imprisonment imposed for his supervised release violation. Brandberg is serving his sentences at Federal Correctional Institution ("FCI") Sheridan. His expected release date is November 13, 2022.

Brandberg submitted a request for compassionate release to the Warden of FCI Sheridan on July 1, 2020, before filing this motion on July 12, 2020. Doc. 41 at 3. Because the Government does not challenge his assertion and more than 30 days have elapsed since July 1, this motion is properly before the Court.

Brandberg argues that the COVID-19 outbreak at FCI Sheridan, coupled with his age and medical conditions present "extraordinary and compelling reasons" for his release. Doc. 41 at 1.[2] Brandberg is 61 years old, with a family history of "cancer and lung problems." *Id*. He asserts that he also has lung problems "and other medical issues" that make him particularly vulnerable to severe illness or death from a

---

[2] Brandberg's initial motion also argued that conditions at FCI Sheridan violated his rights under the Eighth Amendment to the United States Constitution, *see* doc. 41 at 4–9, but he did not argue those grounds at the hearing and the Court will not address them here.

Page 5 – OPINION AND ORDER

COVID-19 infection. *Id*. However, during the presentence investigation earlier this summer, Brandberg reported that "he does not have a history of health problems[,]" which his mother confirmed. PSR (doc. 35) ¶ 54. At BOP Heath Services Heath Screens conducted August 20, 2019 and November 8, 2019, Brandberg denied having seizures, diabetes, cardiovascular conditions, cerebrovascular accident (stroke), hypertension, respiratory conditions, sickle cell anemic, carcinoma or lymphoma, or allergies and denied any history of "previous disease," including hepatitis or other infectious diseases. Doc. 49 at 5–6; *id*. at 10–13. The only condition documented in Brandberg's BOP medical records is chronic migraines, which he treats with Naproxen. *Id*. at 4, 8, 13, 15, 22, 25. Brandberg also asserts that, as of July 8, 2020, he had not been tested for COVID-19. Doc. 41 at 8. However, Brandberg's BOP medical records include a July 4, 2020, report from the Oregon State Public Health Laboratory, which states that a COVID-19 test collected from Brandberg on July 2, 2020, had been negative. Doc. 49 at 25 (reporting "Real-Time RT-PCR for 2019-nCoV: Undetected").

Brandberg filed this motion on July 12, 2020, shortly after FCI Sheridan reported its first two positive COVID-19 tests among inmates. Now, BOP reports that there are four active, confirmed COVID-19 cases among inmates and no cases among staff. *COVID-19 Coronavirus*, FED. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Sept. 17, 2020). In total, FCI Sheridan has had seven confirmed COVID-19 cases among inmates and no deaths attributed to COVID-19. *Id*.

Brandberg seeks release to Newport, Oregon, where he will reside at his sister's, Janet Wood's, home where she, their mother, and her husband live. If released, he would be referred for substance abuse treatment and testing at ReConnections and for mental health treatment through Lincoln County Health and Human Services, both in Newport. On September 14, 2020, the United States Probation Office contacted Mrs. Wood, and she confirmed that she was more than willing to have Brandberg live with her. She also mentioned that the family could use his help caring for their mother. The Probation Office conducted a virtual inspection of Mrs. Wood's home, and reports that Brandberg's release plan appears appropriate. At the hearing, Brandberg informed the Court he could work on Mr. Wood's commercial fishing crew, if permitted by the Court.

Also at the hearing, Brandberg argued for the first time that his family's circumstances and his need for substance abuse treatment present additional "extraordinary and compelling reasons" for his release. As mentioned, Mrs. Wood told the Probation Office that she and her husband could use help caring for her mother. She also wrote Brandberg's counsel to say that the family is in desperate need of help. Mrs. Wood's and Brandberg's mother is 86 years old, with advanced chronic obstructive pulmonary disease and a mass on her kidney and needs 24-hour care. Although she has a caregiver on weekdays, caretaking duties in the evening and weekends fall to Mrs. and Mr. Wood, who both have health issues that limit their mobility.

Brandberg's history of substance abuse dates back to his early teens. PSR (doc. 35) at ¶¶ 58, 59. He began using methamphetamine at age 35. *Id.* at ¶ 59. Each of Brandberg's prior convictions either involved methamphetamine or involved failures to participate in drug treatment and testing. *Id.* at ¶¶ 32–33 (2004 and 2005 convictions for possession of a controlled substance), ¶ 34 (2006 convictions for frequenting a place where controlled substances are used and manufacture and delivery of a controlled substance), ¶ 35 (2009 conviction for possession of methamphetamine), ¶ 36–37 (2011 convictions for contempt of court for failing to complete a drug and alcohol evaluation and failure to submit to urinalysis testing), ¶ 38 (2016 felon-in-possession conviction stemming from a search of Brandberg's apartment where officers found methamphetamine and oxycodone pills, in addition to ammunition and a rifle).

Throughout his term of supervised release before this Court, Brandberg struggled to refrain from controlled substance use. He admitted to using methamphetamine on January 25, February 16, March 15, and May 22, 2018, despite being referred to substance abuse treatment at ReConnections, completing an assessment, and attending several sessions (though he ultimately discontinued treatment). *Id.* at ¶ 38. At a status hearing on June 26, 2018, the Court ordered him to reengage in treatment. *Id.* He did not and, instead, committed the underlying possession offense.

Brandberg argues that this history demonstrates his great need for substance abuse treatment, and that release is necessary to ensure that he can participate in

treatment as soon as possible. At sentencing, the Court recommended that Brandberg have the opportunity to participate in the Residential Drug and Alcohol Program (RDAP) while at FCI Sheridan. Doc. 39 at 2. However, Brandberg argues that he is unlikely to be admitted to the RDAP program. RDAP participants must have at least 24 months remaining on their sentence when they begin the program, and Brandberg asserts that a new cohort of participants started this week and RDAP is unlikely to start another cohort until this one finishes nine months from now. But Brandberg will not be eligible for RDAP nine months from now because his release date is November 2022.

Compassionate release is "rare" and "extraordinary," and courts routinely deny such claims. *United States v. Mangarella*, 2020 WL 1291835, at *2–3 (W.D.N.C. Mar. 16, 2020) ("[A] compassionate release ... is an extraordinary and rare event.") (citation omitted). A defendant bears the burden to show special circumstances meeting the high bar set by Congress and the Sentencing Commission for compassionate release. *See United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (holding that a defendant bears the burden of establishing entitlement to sentencing reduction and citing *United States v. Spr*ague, 135 F.3d 1301, 1306-07 (9th Cir. 1998)). The Court cannot conclude that Brandberg met that burden here.

During the COVID-19 pandemic, many courts have recognized that, when a defendant has a chronic medical condition that may substantially increase the defendant's risk of becoming seriously ill or dying from COVID-19, that condition may satisfy the standard of extraordinary and compelling reasons. *See Hanson*, 2020 WL

##, at *7–9; *United States v. Barber,* No. 6:18-cr-00446-AA-1, 2020 WL 2404679, at *4–5 (D. Or. May 12, 2020); *Joling,* 2020 WL 1903280, at *4–5. But the record does not support Brandberg's claim of lung problems or other conditions that increase his risk of severe illness or death from COVID-19. His chronic migraines are not a recognized COVID-19 risk factor. *See People with Certain Medical Conditions*, CTRS. FOR DISEASE CONTROL & PREVENTION: CORONAVIRUS DISEASE 2019 (COVID-19) (July 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Sept. 17, 2020). The Court recognizes that Brandberg's age heightens the risk from COVID-19. However, the number of confirmed COVID-19 infections at FCI Sheridan is low and has been throughout the pandemic.

Brandberg's additional reasons—his need for substance abuse treatment and family circumstances—are among the circumstances that prevent the Court from finding that his release would not pose a danger to the community. Brandberg's federal offenses were very serious—they involved possession of weapons and significant quantities of controlled substances. Given his history of substance abuse, drug-related convictions, noncompliance with ordered treatment, and supervision failures, he needs close supervision and intensive treatment to ensure his success on release. I cannot find that Brandberg's plan for release to the community where his underlying offenses (and most of his prior offenses) occurred and to participate in substance abuse treatment at the same provider he saw while on federal supervision

would provide the level of treatment and supervision that Brandberg needs. And, while I appreciate his family's need for additional caretakers, I cannot find that taking on that role so early in Brandberg's release and recovery would be conducive to his success on release. Moreover, I cannot determine that there are conditions of release that will reasonably assure the safety of the community if Brandberg were released directly to Newport because the stringent conditions that I imposed in 2016 did not prevent him from committing another crime.

Finally, because I sentenced Brandberg to a significant downward departure only three months ago based on a careful consideration of the § 3553(a) factors, I cannot find that those factors would support his release at this time.

## CONCLUSION

For the reasons above, Brandberg's motion (doc. 41) is DENIED. As mentioned at the hearing, if circumstances change, Brandberg may file a renewed motion, which the Court will consider on an expedited basis.

IT IS SO ORDERED.

Dated this  18th  day of September 2020.

_____/s/Ann Aiken_____

Ann Aiken
United States District Judge